Jacoba, Barbara

| | |
|---|---|
| **From:** | sop@cscinfo.com |
| **Sent:** | Wednesday, February 24, 2010 5:10 PM |
| **To:** | Jacoba, Barbara |
| **Subject:** | Notice of Service of Process |

*CSC SameDay SOP and CSC PowerBrief clients, click here to receive and view your Service of Process documents now. For more information on instant access to your SOP, click Sign Me Up.*

## NOTICE OF SERVICE OF PROCESS

Transmittal Number: 7423249
Date: 02/24/2010

Pursuant to client instructions, we are forwarding this summary and notice of Service of Process. The Service of Process document has been sent to the primary contact listed below.

| | |
|---|---|
| **Entity:** | West Asset Management, Inc. |
| **Entity I.D. Number:** | 2310850 |
| **Entity Served:** | West Asset Management, Inc. |
| **Title of Action:** | Zachary Bostick vs. West Asset Management, Inc. |
| **Document(s) type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Gwinnett County Superior Court, Georgia |
| **Case Number:** | 10A-01607-3 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 02/24/2010 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |

**Sender Information:**
James O. Bass
770-874-6431

**Primary Contact:**
Mr. Greg  Hogenmiller
West Asset Management

**Copy of transmittal only provided to:**
Barb Jacoba
Kathleen Treuil
Luanne Zolczynski

1

Julie Freeman
Marlene Mascari

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the document(s) and taking appropriate action.

Please visit www.cscglobal.com for more information on CSC's Litigation and Matter Management services, including service of process (SOP) history, online acknowledgement of SOP, fully electronic scanned SOP and SOP package tracking information.

**CSC is SAS70 Type II certified for its Litigation Management System.**

**sop@cscinfo.com**

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

ZACHARY BOSTICK,

    PLAINTIFF,

VS.

                              CIVIL ACTION FILE NO.

WEST ASSET MANAGEMENT, INC.
C/O RA CORPORATION SERVICE CO
40 TECHNOLOGY PARKWAY SOUTH     10A-01607-3
SUITE 300
NORCROSS, GA 30092

    DEFENDANT.

### SUMMONS

TO THE ABOVE-NAMED DEFENDANT:

    You are hereby summoned and required to file with Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**JAMES O. BASS (#041239)**
**Bass Green, PC**
349 Creekstone Ridge
Woodstock, GA 30188
(770) 874-6431

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _22_ day of _February_, 20 _10_.

                              Clerk of Superior Court, Gwinnett County

                              By: _____
                                D/ Clerk

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
CLERK'S SUPERIOR COURT
GWINNETT CO. GA

2010 FEB 22  PM 1: 59

TOM LAWLER, CLERK

ZACHARY BOSTICK,

    Plaintiff,

v.

WEST ASSET MANAGEMENT, INC.

    Defendant

CIVIL ACTION NO.:_____

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW, ZACHARY BOSTICK, by and through his undersigned counsel of record, and hereby files this Complaint against Defendant WEST ASSET MANAGEMENT, INC., showing the following:

### PARTIES, JURISDICTION, & VENUE

1.

Plaintiff Zachary Bostick is a resident of the State of Georgia and has been at all times relevant hereto.

2.

Defendant West Asset Management is a Delaware corporation with offices in the state of Georgia. They may be served through their Registered Agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092

3.

Jurisdiction is proper in this Court.

4.

Venue is proper in this Court.

### FACTS COMMON TO ALL CLAIMS

5.

Plaintiff was employed by Defendant from 2005 through October, 2009.

6.

During Defendant's employment of Plaintiff, several high-level or critical employees left the Defendant's employment.

7.

Certain of these high-level and / or critical employees founded businesses engaged in primarily the same industry as Defendant and at times competing directly with Defendant.

8.

In an effort to retain certain employees, the Defendant offered bonuses and other incentives to induce the employees to remain employed with the Defendant rather than depart for potentially competing businesses.

9.

The bonuses and incentives offered were designed to induce the employees to remain at the Defendant's business rather than seeking or accepting lucrative offers with competing firms.

10.

Plaintiff was one of the employees offered bonuses and other incentives to induce him to remain in Defendant's employ rather than seeking or accepting offers from competing firms.

11.

Plaintiff was offered multiple bonus and incentive plans based partly upon various financial and other performance factors of the company.  All such plans were offered to induce Plaintiff to remain in Defendant's employ and not seek similar employment elsewhere.

## COUNT I – BREACH OF CONTRACT

12.

Plaintiff reincorporates and realleges paragraphs 1 through 11 as if incorporated fully herein.

13.

Plaintiff and Defendant entered into an agreement wherein Plaintiff agreed to remain an employee of Defendant's in exchange for certain bonuses and other incentives which were promised by the Defendant.

14.

Plaintiff substantially completed the contract, however was prevented by Plaintiff from completing the entire contract.

15.

At all relevant times Plaintiff was ready, willing, and able to complete the contract.

16.

Defendant's unjust termination of Plaintiff prevented completion of the contract and Defendant's actions thereby breached the agreement between the parties.

17.

Plaintiff prays for the sum of $89,700 as damages for the Defendant's breach of contract.

## COUNT II – QUANTUM MERUIT

18.

Plaintiff reincorporates and realleges paragraphs 1 through 17 as if incorporated fully herein.

19.

Defendant induced Plaintiff to remain in Defendant's employ by making several promises of payment for Plaintiff's continued service and employment.

20.

Based upon the promises of payment made by the Plaintiff, Defendant remained employed with the Plaintiff.

21.

Plaintiff performed services and duties valuable to the Defendant.

22.

Defendant requested the services and dutiful performance of the Plaintiff and knowingly accepted the same.

23.

It would be unjust for Defendant to receive the benefits of Plaintiff's services without the promised due compensation.

24.

At the time Plaintiff provided the services, Plaintiff was under the expectation that Plaintiff would be duly compensated for those services in accordance with Defendant's promises of payment.

25.

Plaintiff herewith prays for the sum of $89,700 in damages as just compensation for the services rendered to Defendant.

## COUNT III – UNJUST ENRICHMENT

26.

Plaintiff reincorporates and realleges paragraphs 1 through 25 as if fully set forth herein.

27.

Defendant induced Plaintiff to provide valuable services to Defendant by promising various bonuses and other incentives for Plaintiff's continued services.

28.

Defendant encouraged Plaintiff to remain in Defendant's employ and accepted the valuable services provided by Plaintiff.

29.

Defendant has attempted to avoid payment for the value received from Plaintiff.

30.

Defendant has been unjustly enriched at the expense of Plaintiff and, in fairness and good conscience, must reimburse Plaintiff for the value received.

31.

Plaintiff herewith prays for the sum of $89,700 in damages as reimbursement for the value of the services conferred upon Defendant.

## COUNT IV – FRAUD & NEGLIGENT MISREPRESENTATION

32.

Plaintiff realleges and reincorporates paragraphs 1 through 31 as if fully set forth herein.

33.

Defendant promised bonuses and other incentives to Plaintiff in order to induce Plaintiff to remain in Defendant's employment and not seek a similar position elsewhere or with a competitor.

34.

Plaintiff relied upon Defendant's promises, forgoing potentially lucrative employment elsewhere.

35.

Defendant failed to promptly disclose to Plaintiff its inability to pay the promised bonuses and other incentives.

36.

Defendant knew that it would be unable to meet the obligations it promised Plaintiff.

37.

Defendant knowingly and with malice aforethought falsely represented that it would compensate and reward Plaintiff for his continued loyalty and service.

38.

Defendant knowingly, negligently or recklessly misrepresented or failed to disclose crucial information about the state of Defendant's business or its ability to pay the promised funds.

39.

Plaintiff justifiably relied upon Defendant's promises, inducements, and misrepresentations to Plaintiff's detriment.

40.

Plaintiff herewith prays for the sum of $89,700 in damages as out-of-pocket and actual damages sustained as a result of Defendant's fraudulent acts and negligent

misrepresentations and an additional three times that amount, or $269,100, as additional

damages pursuant to O.C.G.A. § 51-12-5 plus reasonable attorneys fees.

### COUNT V – ATTORNEYS' FEES

41.

Plaintiff realleges and reincorporates paragraphs 1 through 40 as if fully set forth

herein.

42.

Through its actions as outlined above and by forcing Plaintiff to file this

Complaint, Defendant has acted in bad faith, has been stubbornly litigious, and has

caused the Plaintiff unnecessary trouble and expense.

43.

Pursuant to O.C.G.A. § 13-6-11, Plaintiff herewith prays for a judgment against

Defendant for Plaintiff's attorney's fees, in an amount to be determined at trial.

**WHEREFORE,** Plaintiff prays:

(a) That it have judgment against Defendant on Counts I, II, and III in an amount of

$89,700;

(b) That it have judgment against Defendant on Count IV in an amount of $89,700

and an additional three times that amount, or $269,100, as additional damages

pursuant to O.C.G.A. § 51-12-5 plus reasonable attorneys fees;

(c) That it have judgment against Defendant on Count V for its reasonable attorneys'

fees in an amount to be determined at trial;

(d) That it have judgment against Defendant for all costs of litigation;

(e) That it have a trial by a jury of twelve peers;

(f) And for whatever other measures this Court deems just and proper.

Respectfully Submitted By:

James O. Bass
Attorney for Plaintiff
Georgia Bar No. 041239

Prepared by:
Bass Green, PC
349 Creekstone Ridge
Woodstock, GA 30188
Voice: 770-874-6431
Fax: 88-711-2371

SHERIFF'S ENTRY OF SERVICE                                          SC-85-2

Civil Action No. __10A-01-07-3__

|  | | |
|---|---|---|
| Superior Court | ☒ | Magistrate Court ☐ |
| State Court | ☐ | Probate Court ☐ |
| Juvenile Court | ☐ | |

Date Filed __2/22/10__

Georgia, _GWINNETT_ _____ COUNTY

Attorney's Address
> James Bass
> Bass Green, PC
> 349 Creekstone Ridge
> Woodstock, GA 30188

Name and Address of Party to be Served.

_WEST  ASSET  MANAGEMENT_
_C/O  RA  CORPORATION  SERVICE CO._
_40  TECHNOLOGY  PARKWAY  SOUTH_
_NORCROSS, GA  30092_

_ZACHARY  BOSTICK_

Plaintiff

VS.

_WEST  ASSET  MANAGEMENT_

Defendant

Garnishee

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
☐ I have this day served the defendant_____personally with a copy
of the within action and summons.

**NOTORIOUS**
☐ I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.
Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
☐ Served the defendant _____ a corporation
by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said
affidavit, and on the same day of such posting by depositing a true copy of same in the United State Mail, First Class in an envelope properly addressed to the
defendant(s) at the above address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the
place stated in the summons.

**NON EST**
☐ Diligent search made and defendent _____
not to be found in the jurisdiction of this Court.

This _____ day of _____, 20 ___.

_____
DEPUTY

SHERIFF DOCKET _____ PAGE

*Personal Law, Personalized*

# Bass
# Green

### Attorneys at Law

349 Creekstone Ridge
Woodstock, GA 30188
770.874.6431 voice
888.711.2371 fax

**James O. Bass**
Jim@BassGreen.com
Licensed in GA, TN

**Natalie A. Green**
Natalie@BassGreen.com
Licensed in GA, TN

November 16th, 2009

*Cell: 404-274-20*

Ms. Allyson Jeter
Divisional Vice President, Employee Relations
West Asset Management
2253 Northwest Parkway
Marietta, GA 30067

Re:   Retention bonuses due Mr. Zachary Bostick

Dear Ms. Jeter:

   I have been retained by Mr. Zachary Bostick to represent him regarding certain bonuses and severance amounts that Mr. Bostick is due. As you know, although Mr. Bostick had employment opportunities elsewhere, your company induced Mr. Bostick to remain in your employment by offering him various bonuses and incentives to stay. In reliance upon your company's promises, Mr. Bostick faithfully and loyally remained in your employ and performed his duties. However, your company now seeks to avoid paying Mr. Bostick the promised bonuses and incentives.

   In addition to the $6,000 in severance offered for his years of service, Mr. Bostick is also due 80% of his salary, or $83,200, under the Purchase Division Growth Incentive Program of August 1, 2007 as amended on April 7, 2008, and $6,500 under the Stay Bonus Program of November 20, 2006. Based upon the above amounts, the total amount due Mr. Bostick is $95,700 plus attorneys' fees.

   Please contact me immediately to resolve this matter. If I have not received a reply within 10 days I will advise my client to file suit in this matter. Be advised that if we are forced to litigate in this matter we will be claiming fraud and seeking punitive damages of at least three times the amounts listed above.

Sincerely,

James O. Bass
Attorney at Law

Cc: Mr. Zachary Bostick

*Personal Law, Personalized*

# Bass
# Green
## Attorneys at Law

349 Creekstone Ridge
Woodstock, GA 30188
770.874.6431 voice
888.711.2371 fax

**James O. Bass**
Jim@BassGreen.com
Licensed in GA, TN

**Natalie A. Green**
Natalie@BassGreen.com
Licensed in GA, TN

November 16th, 2009

Ms. Allyson Jeter
Divisional Vice President, Employee Relations
West Asset Management
2253 Northwest Parkway
Marietta, GA 30067

      Re:    Retention bonuses due Mr. Zachary Bostick

Dear Ms. Jeter:

      I have been retained by Mr. Zachary Bostick to represent him regarding certain bonuses and severance amounts that Mr. Bostick is due. As you know, although Mr. Bostick had employment opportunities elsewhere, your company induced Mr. Bostick to remain in your employment by offering him various bonuses and incentives to stay. In reliance upon your company's promises, Mr. Bostick faithfully and loyally remained in your employ and performed his duties. However, your company now seeks to avoid paying Mr. Bostick the promised bonuses and incentives.

      In addition to the $6,000 in severance offered for his years of service, Mr. Bostick is also due 80% of his salary, or $83,200, under the Purchase Division Growth Incentive Program of August 1, 2007 as amended on April 7, 2008, and $6,500 under the Stay Bonus Program of November 20, 2006. Based upon the above amounts, the total amount due Mr. Bostick is $95,700 plus attorneys' fees.

      Please contact me immediately to resolve this matter. If I have not received a reply within 10 days I will advise my client to file suit in this matter. Be advised that if we are forced to litigate in this matter we will be claiming fraud and seeking punitive damages of at least three times the amounts listed above.

                Sincerely,

                James O. Bass
                Attorney at Law

Cc: Mr. Zachary Bostick



To:        Zac Bostick
From:     Mick Mazour
Re:        Growth Incentive Program
Date:     Aug 31, 2007

## PURCHASE DIVISION
## GROWTH INCENTIVE PROGRAM

This memo is to inform you of a new Growth Incentive Program that will give you the ability to significantly enhance your earning potential in recognition of your contribution to divisional growth and profitability.  The following is an outline of the terms and conditions of the program:

1.  The bonus will be calculated and paid on an annual basis (i.e., there will not be any monthly or quarterly payments or installments).
2.  The calculation and payment will occur within sixty (60) days of the end of the calendar year and you must be employed at the time of payment in order to be eligible.
3.  This program is in addition to the other incentive programs that you may be participating in, and does not change your eligibility for those plans.
4.  Eligibility for incentive compensation will be based on the Purchase Division's EBITDA compared to budget (post WAM allocations).  If the annual budget for EBITDA is achieved, incentive compensation will be paid as follows:

    - 2007 - 100% of 2007 base salary (exclusive of bonuses or incentive compensation)
    - 2008 - 100% of 2008 base salary (exclusive of bonuses or incentive compensation)
    - 2009 - 100% of 2009 base salary (exclusive of bonuses or incentive compensation)

5.  In the event that EBITDA for any of the specific years referenced above is at least 95% of budget, but less than 100% of budget, you will be eligible for a pro-rated incentive bonus.  By way of example, if EBITDA is 97% of budget in a particular year, you will receive 97% of the maximum potential bonus for that year.
6.  Nothing in this memo or in the Incentive Program outlined above is intended to be a contract for employment or a guarantee of employment for any particular period of time.  You remain an at-will employee subject to the standard policies of the Company.

President – Mick Mazour
West Asset Management

Date: 8.31.07

Employee – Zac Bostick

Date: 8/16/07

# *Memo*

west | West
Asset
Management

TO:        Zac Bostic

FROM:    Mick Mazour

RE:        Growth Incentive Program

DATE:    April 7, 2008

Please accept this document as an amendment to the Purchase Division Growth Incentive Program that was executed in August 2007. The Growth Incentive Program is hereby amended as follows:

1.    Effective immediately, Section 5 of the Agreement shall be deleted and replaced with the following:

"5. In the event that EBITDA for any of the specific years referenced above is at least 80% of budget, but less than 100% of budget, you will be eligible for a pro-rated incentive bonus. By way of example, if EBITDA is 85% of budget in a particular year, you will receive 85% of the maximum potential bonus for that year. Furthermore, for each of the calendar years above, you will receive a minimum of 80% of the maximum potential bonus regardless of the percentage of actual EBITDA to budget."

2.    All other terms and conditions outlined in the original Growth and Incentive Program document shall remain in effect.

This amendment is in recognition of your value to the organization and to show our long-term commitment to your growth and success within our company. It is our hope that your acceptance of this opportunity is a good faith commitment on your part to help us grow and improve our company in the coming years. Due to the sensitive nature of this amendment, we would appreciate it if it would be held in confidence and not discussed with any third parties.

Mick Mazour, President

Date:

Zac Bostic

Date: 4/8/08



**west**

**West Asset Management**     2253 Northwest Parkway, Ste. 500     800-488-8856
                             Marietta, GA 30067

To:    Zach Bostick
From:  Darrell T. Hanna
Date:  November 20, 2006
Re:    Stay Bonus Program

As we have previously discussed, below outlines a stay bonus program
designed to encourage you to stay employed with West Asset Management.
Each related bonus amount will be paid within 10 business days after the
target date if you are in fact employed by West Asset Management on the
related target date.

| Date | Bonus Amount |
| --- | --- |
| 12/31/06 | $6,500.00 |
| 03/31/07 | $6,500.00 |
| 06/30/07 | $6,500.00 |
| 09/30/07 | $6,500.00 |
| 12/31/07 | $6,500.00 |
| 03/31/08 | $6,500.00 |
| 06/30/08 | $6,500.00 |
| 09/30/08 | $6,500.00 |
| 12/31/08 | $6,500.00 |
| 03/31/09 | $6,500.00 |
| 06/30/09 | $6,500.00 |
| 09/30/09 | $6,500.00 |
| 12/31/09 | $6,500.00 |

Please sign below as return to me at your earliest convenience.

Employee